J-S23032-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: D.M.B., JR. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: D.B., A/K/A D.M.B., | : | |
| SR.,  A/K/A D.B., SR. | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 851 EDA 2021 |

Appeal from the Decree Entered April 8, 2021
In the Court of Common Pleas of Bucks County Orphans' Court at No(s):
2021-A9009


BEFORE:   LAZARUS, J., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    **FILED SEPTEMBER 08, 2021**

D.B., a/k/a D.M.B., Sr., a/k/a D.B., Sr. (Father) appeals from the decree entered April 8, 2021, which terminated his parental rights involuntarily to his son, D.M.B., Jr. (Child).[1]  After careful review, we affirm.

The orphans' court aptly summarized the background of this matter as follows:

> Child was born [in June of] 2015 to [Mother] and [Father]. At the time of Child's birth, Mother was homeless and actively using opiates.  Father had a long history of drug abuse and drug addiction.  From the time of his birth until March of 2019, Child lived with Father and his great-grandparents at his great-grandparents' home.

---

[*] Retired Senior Judge assigned to the Superior Court.
[1] The orphans' court entered a separate decree terminating the parental rights of Child's mother, J.H. (Mother).  Mother did not appeal the termination of her parental rights and did not participate in this appeal.

On March 22, 2019, [Child] was placed in the care of [the Bucks County Children and Youth Social Services Agency (the Agency)] because of Father's consistent drug abuse and drug addiction. Shortly thereafter, the Agency placed Child in the care of [S.G. and W.G. (Foster Parents)]. On May 20, 2019, Child was adjudicated dependent. [Foster Parents] have cared for Child since his placement with the Agency. Father has maintained a regular visitation schedule with Child but has been unsuccessful in maintaining sobriety so as to allow reunification. [Foster Parents] are now seeking to adopt Child.

Orphans' Court Opinion, 5/10/21, at 2 (citations to the record and footnotes omitted).

On January 28, 2021, the Agency filed a petition to terminate Father's parental rights to Child involuntarily.[2] The orphans' court conducted a hearing on the petition on March 25, 2021, during which it heard testimony from Agency caseworker, Victoria Kane; Father; and Father's methadone therapist, Stephanie Szczepanski. After the hearing, on April 8, 2021, the court entered a decree terminating Father's rights. Father timely filed a notice of appeal on April 23, 2021, and a concise statement of errors complained of on appeal.

Father raises the following claims for our review:

1. Did the [orphans'] court erroneously grant . . . [the] Agency's petition to involuntarily terminate the parental rights of [Father] pursuant to 23 Pa. C.S. §[]2511(a)(2) when the Agency failed to prove the grounds thereunder by clear and convincing evidence?

2. Did the [orphans'] court erroneously grant the Agency's petition to involuntarily terminate the parental rights of [Father] pursuant to 23 Pa. C.S.[]§[]2511(a)(5) when the Agency had failed to

_____

[2] The orphans' court appointed legal counsel and a separate guardian *ad litem* to represent Child's legal interests and best interests, respectively. Both of Child's attorneys expressed support for termination of Father's parental rights. N.T., 3/25/21, at 9-12, 122-23.

prove the grounds thereunder by clear and convincing evidence and the Agency failed to provide reasonable services to Father given his disability?

3. Did the [orphans'] court erroneously grant the Agency's petition to involuntarily terminate the parental rights of [Father] pursuant to 23 Pa. C.S. §[]2511(a)(8) when Agency failed to prove the grounds thereunder by clear and convincing evidence?

4. Did the [orphans'] court erroneously move its inquiry to the needs and welfare of the child pursuant to 23 Pa. C.S. §[]2511(b) and erroneously found that termination would best meet said needs and welfare when the Agency failed to prove grounds for involuntary termination of parental rights pursuant to the grounds alleged under 23 Pa. C.S. §[]2511(a)(2), (5) and (8) by clear and convincing evidence?

5. Did the [orphans'] court erroneously find that the needs and welfare of the child as contemplated under 23 Pa. C.S. []2511(b) were best met by terminating the parental rights of [Father]?

Father's brief at 5-6.

Our standard of review in termination of parental rights appeals requires us to accept the findings of fact and credibility determinations of the orphans' court if the record supports them. *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citing *In re Adoption of S.P.*, 47 A.3d 817, 826 (Pa. 2012)). If the record supports the court's findings, we must determine whether the court committed an error of law or abused its discretion. *Id.* An abuse of discretion does not occur merely because the record could support a different result. *Id.* (citing *S.P.*, 47 A.3d at 827). Rather, we may reverse for an abuse of discretion "'only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.'" *Id.* (quoting *S.P.*, 47 A.3d at 826).

Section 2511 of the Adoption Act governs the involuntary termination of parental rights. ***See*** 23 Pa.C.S. § 2511. It requires a bifurcated analysis, in which the orphans' court first focuses on the conduct of the parent pursuant to Section 2511(a). ***In re L.M.***, 923 A.2d 505, 511 (Pa. Super. 2007) (citing ***In re R.J.S.***, 901 A.2d 502, 508 (Pa. Super. 2006)). If the court determines that the party seeking termination has established statutory grounds pursuant to Section 2511(a), it must then turn its attention to Section 2511(b), which focuses on the child's needs and welfare. ***Id.*** One key aspect of the court's needs and welfare analysis is whether the child has an emotional bond with his or her parent and what effect severing that bond might have on the child. ***Id.*** (citing ***R.J.S.***, 901 A.2d at 508; ***In re C.P.***, 901 A.2d 516, 520 (Pa. Super. 2006)). The party seeking termination bears the burden of proof under both Sections 2511(a) and (b) by clear and convincing evidence. ***C.P.***, 901 A.2d at 520 (citing ***In re B.L.L.,*** 787 A.2d 1007 (Pa. Super. 2001)).

In this case, the orphans' court terminated Father's rights pursuant to Sections 2511(a)(2), (5), (8), and (b). We need only agree with the court as to any one subsection of Section 2511(a), in addition to Section 2511(b), to affirm. ***In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*), *appeal denied*, 863 A.2d 1141 (Pa. 2004). Here, we analyze the court's decision to terminate pursuant to Sections 2511(a)(2) and (b), which provide as follows:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

*** 

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

***

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(2), (b).

We begin by considering whether the orphans' court committed an error of law or abused its discretion pursuant to Section 2511(a)(2), which Father addresses in his first claim. To satisfy the requirements of Section 2511(a)(2), the party seeking termination must establish (1) that the parent has exhibited repeated and continued incapacity, abuse, neglect, or refusal, (2) that the incapacity, abuse, neglect, or refusal of the parent has caused the child to be without essential parental care, control, or subsistence, and (3) that the parent cannot or will not remedy the causes of the incapacity, abuse, neglect, or refusal. ***In the Interest of D.R.-W.***, 227 A.3d 905, 912 (Pa. Super. 2020)

(quoting *In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003)). As we have explained, Section 2511(a)(2) does not apply solely to affirmative misconduct but also permits termination based on a parent's incapacity. *In re S.C.*, 247 A.3d 1097, 1104 (Pa. Super. 2021), *reargument denied* (Mar. 10, 2021) (quoting *In re Adoption of C.D.R.*, 111 A.3d 1212, 1216 (Pa. Super. 2015)).

In his brief on appeal, Father argues the Agency failed to prove grounds to terminate his parental rights by clear and convincing evidence. He contends he addressed his substance abuse issues by attending a methadone treatment program and participating in counseling. Father's brief at 16-17. According to Father, he was able to achieve sobriety for approximately eleven months, from January to November 2020, before relapsing. *Id.* at 17. He suggests this relapse resulted in part because he lacked hearing aids, which adversely affected his mental health. *Id.* Father maintains the Agency did very little to help him obtain hearing aids, and that he finally obtained hearing aids through his own efforts, after which he entered a substance abuse treatment facility. *Id.* Although Father acknowledges he was no longer in that facility at the time of the termination hearing, he insists he was "actively attempting to enter into another facility" and can attain sobriety within a reasonable time. *Id.*

The orphans' court explained its decision to terminate Father's parental rights pursuant to Section 2511(a)(2) as follows:

> At the hearing, [Agency caseworker, Victoria Kane,] stated Father's drug usage and abuse directly caused Child's placement

with the Agency in March of 2019. Ms. Kane also testified that at the time Child was placed with the Agency, Father was working . . . as a cable installer and living with his grandparents. In October of 2019, Father was involved in a work-related motor vehicle accident. That same month, [Father's former employer] fired Father because he tested positive for cocaine in a mandated drug test related to the motor vehicle accident.

Ms. Kane stated that for six months from January 2020 until June 2020 Father remained drug free. However, in June of 2020, Father tested positive for drugs. Ms. Kane also testified Father has consistently tested positive for drugs since October of 2020. Finally, and sadly not surprising, the evidence showed that Father tested positive for cocaine and fentanyl as recently as March 19, 2021 – *just days before his March 25, 2021 termination hearing before this [c]ourt*. Thus, the evidence clearly and convincingly established Father has refused or is otherwise just unwilling and unable to take the required steps to end his drug use which began twenty-five years earlier.

The evidence further proved the Agency made numerous futile attempts to help Father overcome his drug addiction with the objective of reunification. The Agency regularly checked on Father to see whether he was seeking treatment for his addiction and to check on the results of his drug tests. However, Father repeatedly returned to his drug usage. Additionally, the Agency advised Father he needed to increase his efforts to remain drug free if he truly sought reunification with Child. Ms. Kane testified she strongly recommended Father participate in a drug rehabilitation program, but Father refused.

Father admitted he has battled substance abuse since he was approximately sixteen years old and continues to battle his drug addiction at his current age of forty-one, a period of approximately twenty-five years. The [c]ourt found Father's lengthy history and recent drug abuse posed a substantial risk to Child's mental and physical wellbeing should Child return to Father's care. Noteworthy is Father's motor vehicle accident while using and abusing cocaine during work and driving his employer's vehicle. Unfortunately, the evidence clearly showed Father is unwilling or unable to remedy his long-standing addiction which placed Child in the Agency's care. Thus, the [c]ourt found clear and convincing evidence was shown to terminate Father's parental rights under Section 2511(a)(2).

Orphans' Court Opinion, 5/10/21, at 5-7 (citations to the record and footnote omitted, emphasis in original).

Our review of the record supports the decision of the orphans' court. As the court explained, Child entered foster care in March of 2019 because of Father's substance abuse, and Father failed to remedy that substance abuse over the next two years. Indeed, Father explained during his testimony that he began engaging in substance abuse when he was in high school, and that he had struggled with addiction for decades, as he was forty-one years old at the time of the hearing. N.T., 3/25/21, at 98. While Father claims in his brief that he was able to achieve sobriety for approximately eleven months, from January to November 2020, Ms. Kane testified that Father produced negative substance abuse screens for about six months, from January to June 2020. *Id.* at 42-44. Father then produced positive screens in June 2020 and October 2020, and he admitted "ongoing" substance abuse in February 2021.[3] *Id.* at 43-47. Father acknowledged he was not sober during approximately June or

_____

[3] While the orphans' court indicates Father tested positive on March 19, 2021, the record is not entirely clear on this point. Our review indicates the only evidence relating to a March 19, 2021, drug screen was a single question and answer during counsel for the Agency's cross-examination of Father. Counsel asked, "isn't it a fact that you tested positive for cocaine and fentanyl because you used cocaine and fentanyl prior to March 19th, 2021? Last Friday, sir?" N.T., 3/25/21, at 99. Father then replied, "It's possible. I don't know." *Id.* Nonetheless, Father's admission that it was "possible" he tested positive for cocaine and fentanyl seems to concede he was engaging in substance abuse at that time.

July of 2020, contrary to the argument he now makes on appeal. ***See id.*** at 117 (Father explaining that he was sober from "around November/December [of 2020] going back until . . . June or July, something like that.").

In addition, it is important to note Father did not attempt to overcome his substance abuse by pursuing additional treatment. Ms. Kane testified she discussed Father's need for additional treatment with him in December 2020, but that he informed her he did not want additional treatment and preferred to continue attending the program where he had been receiving methadone and counseling since 2018. ***Id.*** at 47-48, 56. Although Father eventually did pursue treatment at an inpatient program in March 2021, he testified that he remained there only for one night and only to adjust his methadone level. ***Id.*** at 48-51, 81, 86-89, 93. Father claimed at the hearing he was now seeking to enter another inpatient program and was doing so this time so that he could "stop using drugs." ***Id.*** at 94.

While Father attempted to attribute his ongoing substance abuse in part to his lack of adequate hearing aids, it was within the discretion of the orphans' court to reject this testimony as incredible. ***See In the Interest of D.F.***, 165 A.3d 960, 966 (Pa. Super. 2017), *appeal denied*, 170 A.3d 991 (Pa. 2017) (citing ***In re M.G.***, 855 A.2d 68, 73–74 (Pa. Super. 2004), *reargument denied* (Sept. 3, 2004)) (explaining, "[t]he [o]rphans' [c]ourt is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence."). Notably,

Ms. Kane testified as to two instances where issues arose with Father's hearing aids, one of which occurred in June 2020, and one of which occurred in January 2021, about two months before the termination hearing. N.T., 3/25/21, at 55. She explained that Father rectified the first issue with assistance from the reunification services provider, and that he did not report the second issue to her. *Id.* at 55, 66-67.

Thus, we discern no error of law or abuse of discretion by the orphans' court in concluding Father is incapable of parenting Child due to his substance abuse, and that he cannot or will not remedy his parental incapacity. The record supports the court's finding that Father cannot or will not attain sobriety within a reasonable time as he argues. Meanwhile, Child requires a permanent and stable home. As we have often emphasized, "a child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities. The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future." *In re Adoption of R.J.S.*, 901 A.2d 502, 513 (Pa. Super. 2006). We, therefore, affirm the decree terminating Father's parental rights pursuant to Section 2511(a)(2).

We next consider whether the orphans' court committed an error of law or abused its discretion pursuant to Section 2511(b), which Father addresses

in his fifth claim.[4]  As explained above, Section 2511(b) focuses on the needs and welfare of the child, which includes an analysis of any emotional bond the child may have with his or her parent and the effect severing that bond may have on the child.  **L.M.**, 923 A.2d at 511.  The key questions when conducting this analysis are whether the bond between the parent and child is necessary and beneficial and whether severing that bond will cause the child extreme emotional consequences.  **In re Adoption of J.N.M.**, 177 A.3d 937, 944 (Pa. Super. 2018), *appeal denied*, 183 A.3d 979 (Pa. 2018) (quoting **In re E.M.**, 620 A.2d 481, 484–85 (Pa. 1993)).  It is important to recognize the existence of a bond, while significant, is only one of many factors courts should consider when addressing Section 2511(b).  **C.D.R.**, 111 A.3d at 1219 (quoting **In re N.A.M.,** 33 A.3d 95, 103 (Pa. Super. 2011)).  Other factors include "the safety needs of the child, and . . . the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent."  **Id.**

Father argues that termination of his parental rights was improper with respect to Section 2511(b) because he and Child maintain a loving bond.  He

_____

[4] Because we affirm the termination of Father's parental rights pursuant to Section 2511(a)(2), and conclude Father's first claim is meritless, we reiterate that we need not consider Father's second and third claims regarding Sections 2511(a)(5) and (8).  **B.L.W.**, 843 A.2d at 384.  In addition, Father argues in his fourth claim that the orphans' court should not have considered Section 2511(b), as the Agency failed to establish grounds to terminate pursuant to Section 2511(a).  Father's brief at 22-23.  Because we discern no error of law or abuse of discretion in the court's conclusion that the Agency did establish grounds pursuant to Section 2511(a), Father's fourth claim fails immediately, and we need not discuss it further.

emphasizes Child lived with him until Child was over three-and-a-half years old, and that he had regular visits with Child after Child entered foster care. Father's brief at 25. As a result, Father contends ending all contact between him and Child "would likely be devastating for Child and not in Child's best interest." *Id.* While Father acknowledges Child's foster mother is his cousin, he observes that the orphans' court cannot guarantee post-adoption contact will occur. *Id.*

The orphans' court offered the following analysis as to Section 2511(b):

> The evidence clearly showed Child is thriving with the [foster] family and that it is in his best interest to remain in the care of a loving and supportive household. Child has been under the care of [Foster Parents] since March of 2019. Child has his own bedroom in [Foster Parents'] household and lives alongside [Foster Parents'] four children. Ms. Kane stated that Child has positive relationships with all members of [Foster Parents'] household, that he has become another member of the [foster] family and that he has grown extremely fond of everyone in the household. [Foster Parents] also take care of Child's developmental and emotional needs by ensuring he is obtaining the necessary services he requires. For example, Child has an individualized educational program at school and receives regular therapy to address his Attention Deficit Hyperactivity Disorder.

> The evidence also showed Child hopes to remain living in [Foster Parents'] household. Judith A. Algeo, Esquire . . . , guardian *ad litem* for Child's best interest, stated she visited Child at [Foster Parents'] household on March 13, 2021. Child told Ms. Algeo he believed [his foster mother] to be his mother and [his foster father] to be his real father. Child expressly told Ms. Algeo he hopes to live at [Foster Parents'] home forever.[5]

---

[5] Contrary to the characterization of the orphans' court, the record indicates Ms. Algeo represented Child's legal interests. *See* N.T., 3/25/21, at 5, 9. Ms. Algeo reported that she met with Child, and he seemingly understood Father

*(Footnote Continued Next Page)*

Furthermore, [Foster Parents] are committed to adopting Child and continuing to provide a stable and positive home for him.

The evidence showed a parental bond exists between Father and Child. Ms. Kane stated Father has regularly visited Child two or three times a week while Child has been in the Agency's care. On some of these visits, Ms. Kane observed Father being affectionate with Child and helping Child with schoolwork. Child even called Father "dad" on these regular visits. Although Father appears to have a loving and caring bond with Child during these visits, the [c]ourt found that the termination of Father's parental rights would not destroy this relationship. . . . [Child's foster mother, S.G.,] is directly related to Father as his cousin. [S.G.] also maintains an ongoing relationship with both Father and Father's grandparents — with whom Father lives — which ensures the opportunity for continued communication between Father and Child. Additionally, [Foster Parents] have expressly told the Agency they want Child to continue visiting Father even after adoption. The Court finds that Father will still be afforded the opportunity to maintain a safe connection and relationship with Child despite Father's twenty-five-year drug addiction.

Child's welfare cannot remain indefinitely uncertain and wholly contingent on Father's ability to remain free of opiate and cocaine use. The Agency and Child's guardian *ad litem* all recommended the termination of Father's parental rights in the best interest of the Child. The evidence showed Father has consistently failed to break this self-destructive cycle of drug dependency over the past twenty-five years of his life and that since birth, Child's life has been destabilized as a result and potentially put at risk if Father has driven Child while under the influence. Although the [c]ourt appreciated Father's desire to keep his parental rights, the [c]ourt found clear and convincing evidence supporting the conclusion that Child's developmental, physical and emotional needs are best served with the termination of his parental rights and Child's eventual adoption into the [foster] family.

---

was his father. **See** N.T., 3/25/21, at 12. However, Child indicated his foster father, W.G., "is really his dad, but he calls him Uncle [W.]" **Id.** He explained he wanted to live with Foster Parents "forever. . . . he looked up at me and said . . . I want to live here for a million years with Aunt [S.] and Uncle [W.]; they're my family; this is where I live." **Id.** at 11-12.

Orphans' Court Opinion, 5/10/21, at 9-11 (citations to the record omitted).

The record again supports the decision of the orphans' court. As Father argues, and as the court acknowledged, the record indicates Father and Child maintain a bond. Ms. Kane agreed Father and Child "have a nice relationship," that Child refers to Father as "dad," and that Father and Child are affectionate toward each other. N.T., 3/25/21, at 60. She explained it was "not out of the norm for [Child] to ask me when he could go live with his dad." *Id.* at 71.

The existence of this bond, however, does not preclude the termination of Father's parental rights. The orphans' court considered the bond and found other factors, including Father's incorrigible substance abuse, Child's need for a permanent and stable home, and the availability of that home with Foster Parents, were more critical to Child's needs and welfare. It was within the court's discretion to reach that conclusion. *See C.D.R.*, 111 A.3d at 1220 (citing *M.E.P.*, 825 A.2d at 1276) (affirming the termination of the appellant's parental rights despite the existence of a bond with her child and observing, "[c]learly, it would not be in [the c]hild's best interest for his life to remain on hold indefinitely in hopes that [the appellant] will one day be able to act as his parent.").

Importantly, the record demonstrates Child has a significant bond with Foster Parents, with whom he has lived since entering foster care in March of 2019. N.T., 3/25/21, at 14, 28. Ms. Kane testified Child has a "very positive" relationship with Foster Parents and their biological children. *Id.* at 29-31,

72. Regarding Foster Parents specifically, Ms. Kane explained, "[Child] is very connected to them. . . . [Child's foster mother, S.G.,] goes above and beyond to make sure that [Child's] needs are met with school, with services that he needs, and [Child] just says a lot of positive things about them." *Id.* at 31. S.G. is also Father's cousin and has had a relationship with both Father and Child's great-grandparents, with whom Father resides. *Id.* at 14-15, 72-73. While Father is correct there is no guarantee S.G. will allow contact between him and Child in the future, this family connection creates the opportunity for contact and further supports the conclusion that terminating Father's parental rights will best serve Child's needs and welfare. Thus, because we discern no error of law or abuse of discretion, we affirm the termination decree pursuant to Section 2511(b).

Based on the foregoing, we conclude that Father's claims are meritless, and we affirm the April 8, 2021, decree terminating his parental rights to Child involuntarily.

Decree affirmed.

*Judgment Entered.*

Joseph D. Seletyn, Esq.
*Prothonotary*

*Date: 9/8/2021*

- 15 -